**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-cv-01390-M |
| MEK CHEMICAL CORPORATION and RHINO LININGS CORPORATION, | |
| Defendants. | |

**HONEYWELL'S PARTIAL MOTION TO DISMISS DEFENDANTS' FIRST AMENDED
COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................... 1

LEGAL STANDARD FOR 12(b)(6) MOTION TO DISMISS .................................... 3

ARGUMENT .............................................................................................................. 3

I.     First Counterclaim: Defendants fail to allege an unlawful tying
       arrangement ........................................................................................... 4

       A.     Defendants fail to allege a tying claim based on '928 Patent licenses.
              .................................................................................................. 5

       B.     Defendants fail to allege a tying claim based on 4th generation
              products. ................................................................................... 8

       C.     Defendants fail to allege a substantial impact in the tied market. .............. 9

II.    Second Counterclaim: Defendants fail to allege an "agreement in restraint
       of trade" sufficient to support a Section 1 claim .................................................. 10

III.   Third and Fourth Counterclaims: Defendants fail to allege facts to support
       claims for monopolization or attempted monopolization. .................................... 14

       A.     Defendants fail to plausibly define a relevant product market. ................ 15

       B.     Defendants fail to plausibly define a relevant geographic market. ........... 17

       C.     Honeywell's lawful efforts to enforce its patent rights cannot
              support a monopolization claim. ............................................................. 18

IV.    Fifth and Sixth Counterclaims: Defendants fail to state tortious interference
       claims. ................................................................................................... 21

V.     Seventh Counterclaim: Defendants fail to state a claim for corporate
       defamation ............................................................................................ 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n,*
    776 F.3d 321 (5th Cir. 2015) ................................................................................11

*Advo, Inc. v. Philadelphia Newspapers, Inc.,*
    51 F.3d 1191 (3d Cir. 1995)..................................................................................12

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
    836 F.3d 1171 (9th Cir. 2016) ..............................................................................12

*Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.,*
    634 F. Supp. 316 (D. Kan. 1986)..........................................................................19

*Alcatel USA, Inc. v. DGI Techs., Inc.,*
    166 F.3d 772 (5th Cir. 1999) .................................................................14, 15, 18

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.,*
    300 F.3d 620 (5th Cir. 2002) .........................................................................6, 17

*Apple, Inc. v. Psystar Corp.,*
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...............................................................15

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
    377 U.S. 476 (1964).................................................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................3

*AstraZeneca AB v. Mylan Labs. Inc.,*
    No. M-21-81, 2010 WL 2079722 (S.D.N.Y. May 19, 2010) ................................21

*Belden Corp. v. Internorth, Inc.,*
    413 N.E.2d 98 (Ill. Ct. App. 1980) ......................................................................22

*Belfiore v. N.Y. Times Co.,*
    654 F. Supp. 842 (D. Conn. 1986).......................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................3, 11, 12, 22

*Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.,*
    96 F.3d 10 (1st Cir. 1996).....................................................................................10

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007)........................................................................................18

*Cal. Motor Transport v. Trucking Unlimited*,
    404 U.S. 508 (1972)...................................................................................................19

*Capital Health Sys., Inc. v. Veznedaroglu*,
    No. 15-8288, 2017 WL 751855 (D.N.J. Feb. 27, 2017) ..........................................25

*CCPI Inc. v. Am. Premier, Inc.*,
    967 F. Supp. 813 (D. Del. 1997)...........................................................................6, 17

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)...................................................................................................11

*Dawson Chem. Co. v. Rohm & Haas Co.*,
    448 U.S. 176 (1980)...................................................................................................19

*Du Page Aviation Corp. v. Du Page Airport Auth.*,
    594 N.E. 2d 1334 (Ill. Ct. App. 1992) .....................................................................23

*E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*,
    357 F.3d 1 (1st Cir. 2004).........................................................................................12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)...................................................................................................14

*Fisher v. City of Berkeley, Cal.*,
    475 U.S. 260 (1986)...................................................................................................11

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
    960 F. Supp. 701 (S.D.N.Y. 1997) ...........................................................................17

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
    423 F.3d 374 (3d Cir. 2005)........................................................................................9

*Havoco of Am., Ltd. v. Hollobow*,
    702 F.2d 643 (7th Cir. 1983) ....................................................................................23

*Healy v. Metro. Pier & Exposition Auth.*,
    804 F.3d 836 (7th Cir. 2015) ....................................................................................23

*Hellmutth, Obata & Kassabaum, L.P. v. Efficient Energy, LLC*,
    No. H-14-2945, 2016 U.S. Dist. LEXIS 19904 (S.D. Tex. Feb. 18, 2016) ............25

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*,
    123 F.3d 1445 (Fed. Cir. 1997)..................................................................................7

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
    547 U.S. 28 (2006) ............................................................................................4, 5, 6, 7, 8, 9

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................................22

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) .....................................................................22

*Indus. Models, Inc. v. SNF, Inc.*,
    No. 4:15-CV-689-A, 2015 WL 5606384 (N.D. Tex. Sept. 23, 2015) .....................20

*Int'l Constr. Prod. LLC v. Caterpillar Inc.*,
    No. CV 15-108-RGA, 2016 WL 264909 (D. Del. Jan. 21, 2016) ....................16, 17

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984).........................................................................................4, 6, 9, 10

*Jensen Enters. Inc. v. Oldcastle Precast Inc.*,
    No. C 06-247 SI, 2009 WL 440492 (N.D. Cal. Feb. 23, 2009 .................................21

*Julian v. George Weston Bakeries Distribution, Inc.*,
    No. 05-77-P-S, 2005 WL 1926643 (D. Me. Aug. 11, 2005) ...................................10

*Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*,
    384 F. Supp. 2d 1334 (S.D. Iowa 2005) ...........................................................19, 25

*Linzer Prod. Corp. v. Sekar*,
    499 F. Supp. 2d 540 (S.D.N.Y. 2007).....................................................................16

*Lowe v. Dallas Police Dep't*,
    No. 3:17-CV-704-G-BN, 2017 WL 4863076 (N.D. Tex. Oct. 17, 2017).................3

*Lyddon v. Shaw*,
    56 Ill. App. 3d 815 (2d Dist. 1978).........................................................................23

*Matsushita Elecs. Corp. v. Loral Corp.*,
    974 F. Supp. 345 (S.D.N.Y.1997) ...........................................................................19

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*,
    No. 113CV01054SLDJEH, 2016 WL 5817176 (C.D. Ill. Sept. 30, 2016).............23

*Noblepharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998)...............................................................................20

*Northern Pac. Ry. Co. v. United States*,
    356 U.S. 1 (1958).......................................................................................................4

*Price v. Am.'s Servicing Co.*, No. 3:12-CV-2642-D, 2013 WL 1914939 (N.D.
  Tex. May 9, 2013)......................................................................................................3

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)...................................................................................................20

*PSKS, Inc. v. Leegin Creative Leather Prod., Inc.*,
  615 F.3d 412 (5th Cir. 2010) ............................................................5, 6, 8, 15, 16

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004)...............................................................................20

*Quad/Tech, Inc. v. Q.I. Press Controls B.V.*,
  701 F. Supp. 2d 644 (E.D. Pa. 2010) ......................................................................20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
  124 F.3d 430 (3d Cir. 1997)................................................................................8, 15

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010)......................................................................................13

*Rohm & Haas Co. v. Dawson Chem. Co.*,
  599 F.2d 685 (5th Cir. 1979) ....................................................................................7

*Salem Bros., Inc. v. Corcoran*,
  No. 99 C 8228, 2000 WL 1050589 (N.D. Ill. July 28, 2000) .................................24

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993).................................................................................................14

*Standard Oil Co. v. United States*,
  337 U.S. 293 (1949).................................................................................................13

*Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa
  Par.*,
  309 F.3d 836 (5th Cir. 2002) .............................................................................5, 13

*Tampa Elec. Co. v. Nashville Coal Co.*,
  365 U.S. 320 (1961).......................................................................................13, 14, 17

*TC Heartlands LLC v. Kraft Foods Group Brands LLC*,
  137 S. Ct. 1514 (2017)...............................................................................................2

*Times-Picayune Publishing Co. v. United States*,
  345 U.S. 594 (1953)...................................................................................................6

*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001).....................................................................................16

*United States v. E.I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956).............................................................................................5, 17

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966)....................................................................................................9

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ................................................................................21

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969)..................................................................................................19

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012)......................................................................12, 13, 14

*Zielinski v. Schmalbeck*,
  269 Ill. App. 3d 572, 646 N.E.2d 655 (Ill. Ct. App. 1995)....................................23

Hoping to divert attention from their willful patent infringement, Defendants MEK Chemical Corporation ("MEK") and Rhino Linings Corporation ("Rhino Linings") assert an assortment of counterclaims ranging from federal antitrust causes of action to state-law claims for tortious interference and corporate defamation. But Defendants' attempt at a diversion falls flat. Although Defendants stuff their counterclaims with antitrust buzzwords and formulaic recitations of antitrust causes of action, Defendants fail (even after an amendment) to set forth the facts necessary to plead plausible claims for relief. This Court should reject Defendants' attempt to transform this ordinary patent dispute into a complex web of meritless antitrust claims. For the reasons set forth below, Defendants' First through Seventh Counterclaims should be dismissed.

## BACKGROUND

HFC-245fa is a hydrofluorocarbon ("HFC") that is used as a blowing agent for rigid insulating foams. *See* Counterclaims ¶ 6.[1] HFC-245fa was once viewed as a more environmentally friendly alternative than older chlorofluorocarbons ("CFCs") and hydrochlorofluorocarbons ("HCFCs"). *Id.* ¶ 7. But 25 years after it was developed, HFC-245fa is now being phased out by U.S. regulation, *id.* ¶ 27, and "[a] new generation of blowing agents (the '4th generation products') is being developed by the industry to comply with" more recent federal regulations. *Id.* ¶ 21.

Plaintiff Honeywell International Inc. ("Honeywell") owns several patents that cover processes for manufacturing, and applications for using, HFC-245fa, including U.S. Patent No. 5,902,912 (the '912 Patent) and U.S. Patent No. 6,514,928 (the '928 Patent). *Id.* ¶¶ 11, 12. The '912 Patent expired on June 26, 2017, and as a result, Honeywell may recover damages for infringement of the '912 Patent that occurred ***before*** the patent's expiration date—which is all

---

[1] Both Defendants have filed First Amended Counterclaims with substantially identical factual allegations and consistent paragraph numbering. *See* Dkt. Nos. 40 & 44. All citations to "Counterclaims" apply equally to both docket entries.

Honeywell seeks to do in this litigation. The '928 Patent has not expired.

Because of its patents related to HFC-245fa, Honeywell was the sole supplier of HFC-245fa in the United States for many years. *Id.* ¶ 9. But before the expiration of the '912 Patent, and despite the protections afforded by the '928 Patent, MEK began importing HFC-245fa from a Chinese manufacturer and selling it to Honeywell's customers, including Rhino Linings. *Id.* ¶¶ 14–16. In response, Honeywell sued MEK[2] and Rhino Linings[3] for patent infringement, as any patent owner whose rights are infringed is legally permitted to do. *Id.* ¶ 19.

Defendants answered Honeywell's complaints and filed a hodge-podge of counterclaims, ranging from federal antitrust violations under Sections 1 & 2 of the Sherman Act to state-law claims for tortious interference and corporate defamation. At the January 16, 2018 Scheduling Conference, Honeywell advised the Court of the deficiencies in the counterclaims and of Honeywell's intent to file a motion to dismiss. Following the conference, Defendants filed Amended Counterclaims (*see* Dkt. Nos. 40 & 44), presumably in an attempt to shore up the pleading deficiencies plaguing their original counterclaims.

Even after the amendments, Defendants' antitrust theories and claims are difficult to pin down. Defendants have adopted a shotgun-pleading approach—alleging a variety of unsupported, conclusory allegations and convoluted and inconsistent legal theories—in the hope that something

---

[2] Honeywell originally sued MEK for patent infringement of the '912 Patent in the U.S. District Court for the District of New Jersey in December 2016 (the "New Jersey action"). In response, MEK filed various motions. While the motions were pending, the Supreme Court issued the *TC Heartlands* decision. *See TC Heartlands LLC v. Kraft Foods Group LLC*, 137 S. Ct. 1514 (2017). As a result, in May 2017, Honeywell voluntarily dismissed the New Jersey action and re-filed its claims in this Court. Dkt. No. 1 and brought a separate action against MEK for infringement of Honeywell's U.S. Patent No. 6,514,928 (the '928 Patent).
[3] In January 2018, Honeywell filed a complaint against Rhino Linings, one of MEK's customers for the infringing product (HFC-245fa). *See* Dkt. No. 36. The Court consolidated that action against Rhino Linings with Honeywell's previously consolidated cases against MEK. *Id.*

will stick. Beyond lodging complaints about Honeywell's enforcement of its legally granted patent rights, Defendants offer various concerns about Honeywell's general business practices; for example, they lament that Honeywell has a "general practice" of locking customers into "spurious long-term supply agreements." Counterclaims ¶ 33. But Defendants fail to explain how any of their specific or generalized grievances support any of their various counterclaims. Defendants' main argument appears to be that Honeywell's attempt (or threat) to enforce its patents should be punished under the antitrust laws. Unfortunately for Defendants, that is not the law. Honeywell has every right to enforce its legally granted patent rights.

## LEGAL STANDARD FOR 12(b)(6) MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim lacks facial plausibility unless the complaint contains "factual content" sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to state a claim for relief. *Id.* at 679.

## ARGUMENT

Defendants' counterclaims are presented in "the classic 'shotgun' manner . . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *Lowe v. Dallas Police Dep't*, No. 3:17-CV-704-G-BN, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017) (citation omitted); *see also Price v. Am.'s Servicing Co.*, No. 3:12-CV-2642-D, 2013 WL 1914939, at *6 n.4 (N.D. Tex. May 9, 2013) (describing the typical shotgun complaint as one that "sets forth an excessive number of facts, and then adopts them in conclusory fashion

3

to a number of legal claims" (citation omitted)). Not surprisingly, that haphazard pleading strategy does not make for robust counterclaims; on the contrary, Defendants' shotgun approach results in counterclaims that are deficient in nearly every respect.

**I.       First Counterclaim: Defendants fail to allege an unlawful tying arrangement.**

Defendants' First Counterclaim alleges illegal tying and leveraging under Sections 1 and 2 of the Sherman Act. Those tying claims fail for a host of reasons.

A tying arrangement is "an agreement by a party to sell one product [the tying product] but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that [tied] product from any other supplier." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its *control over the tying product* to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34–35 (2006) (emphasis added) (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984)). Tying arrangements are now recognized for their procompetitive benefits and, as a result, antitrust claims alleging an unlawful tying arrangement are subject to exacting scrutiny. *See Illinois Tool Works*, 547 U.S. at 35 ("Over the years . . . this Court's strong disapproval of tying arrangements has substantially diminished.").

Defendants attempt to assert two separate tying claims. First, Defendants allege that "Honeywell improperly offered to grant Rhino Linings a license covering the '928 Patent (the 'license tying product') if Rhino Linings agreed to purchase all of its requirements for the HFC-245fa product in the United States (the 'tied product') exclusively from Honeywell." Counterclaims ¶ 20. Second, Defendants allege that "Honeywell improperly threatened to not sell its 4th generation products (the 'tying product') to Rhino Linings unless Rhino Linings agreed to

purchase all of its requirements for the HFC-245fa product (the 'tied product') in the United States exclusively from Honeywell." Counterclaims ¶ 22. To maintain those tying claims, Defendants must allege (1) that Honeywell has "appreciable economic power" in the market for the two tying products (licenses covering the '928 Patent and 4th generation products), and (2) that the alleged tying arrangement "affects a substantial volume of commerce" in the market for the tied product (the HFC-245fa product). *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836, 842 (5th Cir. 2002). Defendants fail to satisfy those requirements.

**A.      Defendants fail to allege a tying claim based on '928 Patent licenses.**

Defendants cannot allege a tying claim based on a '928 Patent license because they fail to allege facts establishing that a license covering the '928 Patent constitutes an independent product market or that the "license tying product" is part of a separate and distinct product market (the HFC-245fa product).

"[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." *See Illinois Tool Works*, 547 U.S. at 46. To do so, the plaintiff must plead facts to adequately define a relevant product and geographic market. *See, e.g., Surgical Care Ctr.*, 309 F.3d at 841 (rejecting tying claim where plaintiff failed "sufficiently to define the relevant geographic market for the tying product"). To define a relevant product market, a plaintiff must include all products that are "reasonably interchangeable by consumers for the same purposes.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss

may be granted." *PSKS*, 615 F.3d at 417–18 (quoting *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002)).

Here, Defendants offer no allegations—none at all—that even attempt to define a relevant product market consisting of licenses over the '928 Patent. The counterclaims are completely silent. Instead, it appears that Defendants rest their theory on the notion that patents (or licenses covering patents) necessarily constitute relevant markets. That theory has been rejected by the Supreme Court. It is now well settled that the mere existence of a patent neither creates a relevant market nor establishes market power. *See Illinois Tool Works*, 547 U.S. at 43–44 (agreeing with "the vast majority of academic literature" which "recognizes that a patent does not necessarily confer market power"). Instead, Defendants must define a relevant product market in terms of interchangeability and cross elasticities of demand. *CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 818 (D. Del. 1997) ("[Counter-plaintiff] cannot define the relevant product market by the products covered by the '551 patent. Such a product market definition will not survive a motion to dismiss . . . . [Plaintiff] must refer to any reasonably interchangeable alternatives in defining the relevant product market."). Having failed to do so, Defendants' tying claim related to '928 Patent licenses must be dismissed.

Yet even if Defendants had alleged that a license covering the '928 Patent is a relevant market, the tying claim would still fail because Defendants do not allege that '928 Patent licenses (the tying product) and HFC-245fa (the tied product) are part of distinct product markets. "[A] tying arrangement cannot exist unless *two separate product markets* have been linked." *Jefferson Par. Hosp.*, 466 U.S. at 21 (emphasis added). Where the tying and tied products are part of the same relevant market, the claim must fail. *See Times-Picayune Publishing Co. v. United States*, 345 U.S. 594 (1953) (rejecting tying claim where tying and tied products were both in the same

market).

Here, there can be no question that licenses covering the '928 Patent are part of the same product market as HFC-245fa—the product covered by the '928 Patent. Of course, anyone who purchases a patented product from a patent owner receives an implied license to use the product for its intended purpose. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964) ("[I]t is fundamental that sale of a patented article by the patentee or under his authority carries with it an 'implied license to use.'"); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*, 123 F.3d 1445, 1451 (Fed. Cir. 1997) ("The buyer has an implied license under any patents of the seller that dominate the product or any uses of the product to which the parties might reasonably contemplate the product will be put."); *Rohm & Haas Co. v. Dawson Chem. Co.*, 599 F.2d 685, 687 (5th Cir. 1979), *aff'd*, 448 U.S. 176 (1980) ("By operation of law, purchasers of propanil thus receive implied license to use the patented method."). Because the patent and the patented product are necessarily part of the same market, the tying claim must be dismissed.

Finally, even setting aside the technical defects, Defendants' patent-license tying claim is nonsensical and implausible in light of Defendants' own allegations. The "essential characteristic" of a tying claim is that the defendant has such dominant control over the tying product (a product that the consumer wants or needs) that the consumer has no choice but to purchase a tied product from the defendant. *Illinois Tool Works*, 547 U.S. at 34. But here, Defendants' entire defense in this lawsuit is that the '928 Patent is invalid and "of such a narrow scope" that no one could possibly want or need it. Counterclaims ¶ 32 (alleging that the '928 Patent "is of such narrow scope that Honeywell has no reasonable chance of establishing either actual infringement . . . or indirect infringement"); *see also id.* ¶ 12. Defendants cannot have it both ways: If the patent is worthless, as Defendants allege, then Honeywell could not plausibly leverage it to tie consumers into

purchasing HFC-245fa from Honeywell.

**B.      Defendants fail to allege a tying claim based on 4th generation products.**

Defendants' tying claim concerning 4th generation products is equally defective because they fail to allege (1) that 4th generation products constitute a standalone product market, or (2) that Honeywell possesses such substantial market power in a 4th generation market that it can force customers to purchase unwanted HFC-245fa products. *See Illinois Tool Works*, 547 U.S. at 46 ("[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."). Indeed, highlighting the paucity of the allegations, Defendants fail to identify a single 4th generation product that is commercially available for sale, instead alleging only that 4th generation products are "being developed by the industry" and are "expected to arrive on the commercial market in the next few years." Counterclaims ¶ 21. That allegation defeats Defendants' tying claim because, of course, there can be no relevant product market without a marketable product that fits within the market.

Even if Defendants could define a product market without identifying a commercially available product, the allegations are insufficient because Defendants do not even attempt to define a 4th generation product market with reference to the rule of interchangeability. *See PSKS*, 615 F.3d at 417–18; *see also Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (claims should be dismissed "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products"). Defendants provide no factual allegations about whether there are "interchangeable substitute products" for the 4th generation blowing agents and provide no factual basis to plausibly explain why the relevant market should be limited to a single—allegedly not yet available—product. Moreover, Defendants' failed attempt (discussed further in Section III.A.

8

below) to allege a relevant market for HFC-245fa products (the tied product in both tying claims) cannot save a tying claim related to 4th generation products. As explained above, a plaintiff must separately define a relevant product market for both the tying and tied products. *See Jefferson Par. Hosp.*, 466 U.S. at 21 ("[A] tying arrangement cannot exist unless *two separate product markets* have been linked." (emphasis added)). Because Defendants do not define a 4th generation product market with reference to the rule of interchangeability, the tying claim must be dismissed.

Defendants also fail to adequately allege that Honeywell possesses market power over 4th generation products. *Illinois Tool Works*, 547 U.S. at 46 (holding that a plaintiff "must prove that the defendant has market power in the tying product"). Market power is "the power to control prices or exclude competition" in a given market. *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). To establish market power, plaintiff generally "must plead and produce evidence . . . of the alleged monopolist's dominant share of that market, and of high barriers to entry." *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 381 (3d Cir. 2005) (citation omitted). Given that Defendants allege that Honeywell does not currently sell a 4th generation product, it is not surprising that they likewise fail to allege facts plausibly suggesting that Honeywell possesses a dominant share of that nonexistent market. Defendants allege that 4th generation products are "being developed by the industry," including by competitors like MEK. Counterclaims ¶ 21 ("MEK is also developing its own alternative to HFCs."). Defendants allege no facts to support a plausible inference that Honeywell has market power over unavailable 4th generation products that the entire industry is working to develop. Defendants certainly do not allege that Honeywell has such appreciable power in that nonexistent market that it can presently force customers to purchase HFC-245fa products that they do not want.

### C. Defendants fail to allege a substantial impact in the tied market.

Defendants also fail to allege impact on a substantial volume of commerce in the tied

market. Defendants do not identify a single customer who participated in a purported tying arrangement. Instead, Defendants merely allege that Honeywell "threatened to not sell" its 4th generation products to Rhino Linings (Counterclaims ¶ 22) and "offered to grant" Rhino Linings a license covering the '928 Patent. *Id.* ¶ 20. Because Defendants never allege that Honeywell made good on its threat or actually executed a deal with Rhino Linings, the claims must be dismissed.

Indeed, courts are clear that "a threat alone is insufficient to constitute an illegal tying arrangement." *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 17 (1st Cir. 1996). "Where a tying product has not been withheld, there is no tie." *Julian v. George Weston Bakeries Distribution, Inc.*, No. 05-77-P-S, 2005 WL 1926643, at *4 (D. Me. Aug. 11, 2005) (quoting *Borschow*, 96 F.3d at 18). Here, Defendants allege that Honeywell is developing (not selling) 4th generation products. Given that allegation, there is nothing to support that Honeywell has made good on a threat not to supply 4th generation products to any customer.

Likewise, the existence of this litigation makes plain that Honeywell did not, in fact, grant Rhino Linings an unrestricted license covering the '928 Patent in exchange for HFC-245fa purchases; instead, Honeywell has sued Rhino Linings for patent infringement because Rhino Linings continues to purchase HFC-245fa from MEK. There is nothing in the Amended Complaint to support a plausible inference that the alleged tying arrangement has impacted a substantial volume of commerce for HFC-245fa, so the tying claims should be dismissed.

## II.     Second Counterclaim: Defendants fail to allege an "agreement in restraint of trade" sufficient to support a Section 1 claim.

Defendants' Second Counterclaim—styled "Sherman Act Section 1: Agreements in Restraint of Trade"—represents shotgun pleading at its worst. Without offering any factual detail, Defendants allege that Honeywell violated Section 1 by "willfully participat[ing] in . . . contracts, combinations, and/or conspiracies, including the tying agreements, leveraging agreements, long-

term supply and/or requirements contracts, exclusive dealing agreements with customers, and sham litigation, false advertising and false representations, with the specific intent to unreasonably restrain competition in interstate trade or commerce." Counterclaims ¶ 49. It would be difficult to craft an allegation with more legal conclusions and less factual support. That shotgun-style conclusory allegation does not provide sufficient notice to sustain a Section 1 claim.

It is hard to even know where to begin with Defendants' multi-tentacled Section 1 claim. Many of the items listed in Defendants' conclusory allegation are easily dismissed because they are the exact *opposite* of the type of conduct necessary to state a Section 1 claim. Section 1 prohibits any "contract, combination . . . or conspiracy" that unreasonably restrains trade. 15 U.S.C § 1. "As opposed to Section 2 of the Sherman Act, Section 1 is only concerned with concerted conduct among separate economic actors," *Abraham & Veneklasen Joint Venture v. Am. Quarter Horse Ass'n*, 776 F.3d 321, 327 (5th Cir. 2015), and "does not reach conduct that is wholly unilateral." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984). The "crucial question" in assessing a Section 1 claim "is whether the challenged anticompetitive conduct stems from independent decision or from an *agreement*, tacit or express." *Twombly*, 550 U.S. at 553; *Fisher v. City of Berkeley, Cal.*, 475 U.S. 260, 266 (1986) ("Even where a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of agreement."). Here, many of the conclusory statements in Defendants' Second Counterclaim—sham litigation, false advertising and false representations," Counterclaims ¶ 49—relate to unilateral conduct, "not concerted conduct among separate economic actors," and thus cannot state a Section 1 claim. *Abraham*, 776 F.3d at 327.

The only factual allegation that relates to an actual agreement is Defendants' assertion that "Honeywell has implemented a general practice of binding customers to spurious long term supply

agreements" that "far exceed any reasonable period of time." Counterclaims ¶ 33. But phrases like "spurious," "long-term" and "far exceed" are pure conclusions, not factual allegations sufficient to sustain a Section 1 claim. *Twombly*, 550 U.S. at 555 (a plaintiff must allege "more than labels and conclusions" and that courts "are not bound to accept . . . a legal conclusion couched as a factual allegation" (quotation marks and citation omitted)). Defendants do not identify a single contract or allege the actual terms of any contract executed by Honeywell. There is no allegation about the time period of these purported contracts, whether they can be terminated, who requested the long-term agreements, or how MEK is foreclosed from competing for those customers. Nor do Defendants allege facts describing contract terms that are standard in the industry to allow the Court to evaluate whether Honeywell's agreements actually "exceed any reasonable period of time." *See Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1204 (3d Cir. 1995) (holding that antitrust claim lacked merit because defendants' long-term contracts "did not depart from standard industry practice"). There are simply no facts sufficient to state a claim for relief that is plausible on its face.

Defendants also pepper their counterclaims with conclusory assertions that Honeywell has proposed "exclusive dealing arrangements." *See* Counterclaims ¶¶ 20, 22, 37, 49. But, again, Defendants fail to identify a single, executed exclusive deal. Of course, "a prerequisite to any exclusive dealing claim is an agreement to deal exclusively." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1181 (9th Cir. 2016) (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 270 (3d Cir. 2012)). Without a factual allegation to establish that Honeywell entered into an exclusive contract with a customer, there can be no claim for exclusive dealing.

In any event, "exclusive dealing contracts are not disfavored by the antitrust laws," *E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 8 (1st Cir. 2004), but are,

instead, recognized for their procompetitive benefits. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) ("[I]t is widely recognized that in many circumstances, [exclusive dealing arrangements] may be highly efficient—to assure supply, price stability, outlets, investment, best efforts or the like—and pose no competitive threat at all."); *see also Standard Oil Co. v. United States*, 337 U.S. 293, 306 (1949) (explaining that exclusive contracts "assure supply, afford protection against rises in price, enable long-term planning on the basis of known costs, and obviate the expense and risk of storage in the quantity necessary for a commodity having a fluctuating demand"). "Due to the potentially procompetitive benefits of exclusive dealing agreements, their legality is judged under the rule of reason." *ZF Meritor*, 696 F.3d at 271 (citing *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961)). Accordingly, a plaintiff must plead (and later prove) that (1) the defendant has "significant market power" in the relevant market, (2) the exclusive contracts resulted in a "substantial foreclosure" of the market, (3) the contracts were "of sufficient duration to prevent meaningful competition by rivals," and (4) the anticompetitive effects outweigh the procompetitive benefits. *ZF Meritor*, 696 F. 3d at 271–72 (collecting cases) (citations omitted). Defendants' threadbare allegations fail to satisfy those essential requirements.

Defendants' failure to allege that Honeywell has market power in a relevant product market—which Defendants purport to limit to a single product, HFC-245fa—is discussed in extensive detail in other parts of this brief and will not be repeated here. *See* Section III.C., *infra*. But those same defects also doom an exclusive dealing claim. *Surgical Care Ctr.*, 309 F.3d at 842 (affirming judgment in favor of defendant accused of exclusive dealing because the plaintiff failed to show the alleged exclusive contract "produced anticompetitive effects *in the relevant markets*").

Beyond that defect, Defendants also fail to allege market foreclosure—let alone substantial

foreclosure—resulting from any exclusive contract. *See Tampa Elec.*, 365 U.S. at 327. While there is "no fixed percentage at which foreclosure becomes 'substantial,'" *ZF Meritor*, 696 F.3d at 327, "foreclosure of 40% to 50% [of the market] is usually required to establish an exclusive dealing violation." *Id.* at 286. To the extent Defendants allege that anyone was steered away from MEK, those allegations concern the impact of this litigation, not an exclusive contract. But if Honeywell prevails in this patent litigation, then, of course, MEK will be legally barred from selling HFC-245fa in the United States. That result, however, is irrelevant to the Section 1 claim. Instead, the question here is whether an exclusive contract resulted in substantial foreclosure of the market. On that score, Defendants allege nothing. On the contrary, the only consumer who is even alleged to have been offered an exclusive contract—Rhino Linings—apparently rejected the deal.

Finally, as discussed above, Defendants fail to allege any details about the purported exclusive deals (including term duration) to permit this Court to conduct a necessary evaluation. In sum, Defendants allege none of the facts necessary to state an actionable claim for exclusive dealing. The Section 1 counterclaim should be dismissed.

## III.   Third and Fourth Counterclaims: Defendants fail to allege facts to support claims for monopolization or attempted monopolization.

In its Third and Fourth Counterclaims, Defendants assert claims for monopolization and attempted monopolization under Section 2 of the Sherman Act. To state a monopolization claim, a plaintiff must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 781 (5th Cir. 1999) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992)); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) ("[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the

defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power."). Defendants fail to satisfy those requirements. Defendants do not allege sufficient facts to plausibly support a relevant product market limited to the HFC-245fa product, much less show that Honeywell possesses power in that ill-defined market. Nor do Defendants identify any exclusionary conduct by Honeywell that can sustain a claim for monopolization.

### A.   Defendants fail to plausibly define a relevant product market.

"To prove a monopolization claim, the plaintiff must first establish the relevant product market." *Alcatel*, 166 F.3d at 781. In defining the relevant market, a plaintiff must include all products that are "reasonably interchangeable by consumers for the same purposes.'" *PSKS*, 615 F.3d at 417. Monopolization claims should be dismissed if "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products." *Id.* at 417–18; *see also Queen City Pizza*, 124 F.3d at 436.

For purposes of its monopolization claims, Defendants allege that the product market is limited to a single product used for a specific purpose—that is, "HFC-245fa as a blowing agent for the spray foam industry." Counterclaims ¶ 25. As an initial matter, that assertion is presumptively implausible. Courts have long been suspicious of efforts to narrowly limit the relevant market to a single product. *See Belfiore v. N.Y. Times Co.*, 654 F. Supp. 842, 846 (D. Conn. 1986), *aff'd*, 826 F.2d 177 (2d Cir. 1987) (describing plaintiff's attempt to limit market to "upscale readers" as similar to a "strange red-haired, bearded, one-eyed man-with-a-limp classification"). "Single-brand markets are, at a minimum, extremely rare." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008); *see also PSKS*, 615 F.3d at 418 (stating that it is only in "rare circumstances" that "a single brand of a product or service can constitute a

relevant market for antitrust purposes"). While there may be "rare and unforeseen circumstances" where a relevant market may consist of only a single product, such markets are "counterintuitive" and require particularized factual allegations to plausibly show that the product "is so unique that it suffers no actual or potential competitors." *Id.* (emphasis in original); *see also Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 554 (S.D.N.Y. 2007) (stating that "it would strain credulity to narrow the relevant product market" to a single product).

Here, Defendants fail to offer the factual allegations necessary to plausibly support a single-brand product market limited to "HFC-245fa as a blowing agent for the spray foam industry." Counterclaims ¶ 25. To establish that this is one of the "rare circumstances" where a single-product market is appropriate, Defendants must allege that "consumers are 'locked in' to [the] specific brand by the nature of the product." *PSKS*, 615 F.3d at 418. They fail to do so. Instead, Defendants merely assert, in a conclusory fashion, that HFC-245fa "has no strong, reasonable, readily available, and approved substitutes, and thus there is a low cross-elasticity of demand," and that other "theoretically viable substitutes are either not ready for the market, or require prior regulatory approval, or suffer from functional deficiencies." Counterclaims ¶ 25. Although Defendants identify two other blowing agents which they claim are not substitutable, Counterclaims ¶ 25, they fail to identify whether there are other available blowing agents. And more importantly, Defendants offer nothing to support or explain why consumers are unable to switch from spray insulation to a different foam insulation. Defendants' conclusory assertions lack the factual detail needed to exclude available alternatives and restrict the market in the manner Defendants propose. *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) ("Cases in which dismissal on the pleadings is appropriate frequently involve . . . failed attempts to limit a product market to a single brand . . . ."); *Int'l Constr. Prods. LLC v. Caterpillar Inc.*, No. CV 15-108-RGA,

2016 WL 264909, at *8 (D. Del. Jan. 21, 2016) (rejecting conclusory allegation that there were no "close[] substitute[s]" and dismissing monopolization claim that attempted to limit market to single category of construction equipment).

While Defendants allege that HFC-245fa is "ideally suited" for use as a blowing agent because it is "non-flammable, dries quickly, [and] expands properly," Counterclaims ¶ 8, again they fail to address whether other types of foam or non-foam insulation (i.e., non-spray foam) are part of the relevant market. It is simply not enough to list out traits that make one product unique or special. *See, e.g.*, *E. I. du Pont*, 351 U.S. at 394 ("[W]here there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist merely because the product said to be monopolized differs from others. If it were not so, only physically identical products would be a part of the market."). Nor does the existence of patents covering a product suffice to restrict the outer boundaries of the relevant market. *See CCPI*, 967 F. Supp. at 818 (holding that plaintiff could not "define the relevant product market by the products covered by the '551 patent"). Instead, the plaintiff must affirmatively allege facts that plausibly demonstrate that there are no other products that impose a competitive restraint on HFC-245fa. *See Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 706 (S.D.N.Y. 1997) (granting motion to dismiss where plaintiff "made no reasonable showing why TWA airline tickets for travel between certain cities should be considered a market unto itself, as distinguished from the market consisting of all airline tickets for travel between the paired cities"). Defendants failed to do so, so their monopolization claim must be dismissed.

### B.   Defendants fail to plausibly define a relevant geographic market.

Defendants also fail to adequately define a geographic market. The Fifth Circuit has explained that the relevant market "must be charted by careful selection of the market area in which the seller operates and to which the purchaser can practicably turn for supplies." *Apani*, 300 F.3d

at 626 (quoting *Tampa Elec.*, 365 U.S. at 327). A properly defined geographic market "must correspond to the commercial realities of the industry and be economically significant." *Id.* at 628.

Here, Defendants offer only a single conclusory allegation that the relevant geographic market is the United States, but fail to explain or justify that conclusion. Instead, Defendants' factual allegations actually contradict their conclusory assertion. Defendants admit that MEK purchases HFC-245fa from China. Counterclaims ¶ 14. As a result, the only plausible inference is that customers and suppliers are willing and able to look beyond U.S. borders to acquire HFC-245fa and other economically interchangeable products. Because Defendants' alleged geographic market does not comport with commercial realities, the monopolization claim should be dismissed.

## C.   Honeywell's lawful efforts to enforce its patent rights cannot support a monopolization claim.

Even if Defendants had adequately defined the relevant market, their monopolization claims would still fail because Defendants do not identify any anticompetitive conduct that is proscribed by federal antitrust laws.

To state a monopolization claim, "the acquisition or possession of monopoly power must be accompanied by some anticompetitive conduct," *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007), as "distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Alcatel*, 166 F.3d at 781. Defendants, however, fail to provide Honeywell or the Court with notice about what conduct they believe is anticompetitive. Instead, Defendants merely assert that "Honeywell has unlawfully engaged in the exclusionary acts set forth above." Counterclaims ¶ 52. That formulaic recitation is not enough.

Giving Defendants the benefit of the doubt, it would appear that the monopolization claim is based principally on Honeywell's threats and ultimate decision to initiate this patent-infringement litigation, as well as Honeywell's threats to institute similar litigation against

customers who purchase HFC-245fa from MEK. *See* Counterclaims ¶¶ 29–32. But reasonable efforts to enforce a legal patent right do not run afoul of federal antitrust law. Indeed, "the essence of a patent grant is the right to exclude others from profiting by the patented invention." *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 215 (1980). The "heart" of a patent owner's "legal monopoly is the right to invoke the State's power to prevent others from utilizing his discovery without his consent." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969) (citations omitted). That right to sue to enforce a patent right is codified into federal law. 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent"). It is also constitutionally protected under the Supreme Court's *Noerr-Pennington* doctrine. *See Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

In addition, the antitrust immunity afforded to private litigation also applies to threats to sue, as well as any and all communications with customers or the public at large about the litigation. *See, e.g.*, *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp.*, 634 F. Supp. 316, 326 (D. Kan. 1986) (extending *Noerr-Pennington* immunity to press releases publicizing a lawsuit and to threats of further legal action; "If resort to the courts is protected by *Noerr-Pennington*, then threats to do so, without more, are likewise immune from liability."); *Matsushita Elecs. Corp. v. Loral Corp.,* 974 F. Supp. 345, 359 (S.D.N.Y. 1997) ("The Court concludes . . . that acts incidental to protected litigation—acts that are 'reasonably and normally attendant upon protected litigation,' such as sending letters threatening court action—are entitled to immunity to the same extent as the related litigation."); *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349-50 (S.D. Iowa 2005) (extending immunity to press releases).

Defendants try to circumvent the immunities traditionally afforded to patent owners by invoking what is known as the "sham" litigation exception. Under the sham exception, a patent-

infringement action may be viewed as "anticompetitive" if the plaintiff can show that the suit was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1305 (Fed. Cir. 2004) (quoting *Noblepharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998)). To prevail on a sham litigation theory, a plaintiff must show that the litigation was both objectively and subjectively baseless. *See Indus. Models, Inc. v. SNF, Inc.*, No. 4:15-CV-689-A, 2015 WL 5606384, at *2 (N.D. Tex. Sept. 23, 2015) ("To establish the sham exception, plaintiff must first show that the underlying litigation was objectively baseless in the sense that no reasonable litigant could conclude that the suit was reasonably calculated to elicit a favorable outcome and then show that defendants subjectively intended the prosecution of their claims to interfere directly with plaintiff's business through the pursuit of the litigation (as opposed to its outcome).").

Defendants allege that Honeywell's lawsuit concerning the '912 Patent is objectively baseless because the '912 Patent is expired. Counterclaims ¶ 32. Defendants misunderstand the basis of Honeywell's claim under the '912 Patent. Even though the '912 Patent expired on June 26, 2017, nothing precludes Honeywell from enforcing the patent to recover monetary damages suffered before the patent's expiration—which is exactly what Honeywell seeks to do. Defendants offer nothing to demonstrate that a claim for pre-expiry monetary damages is so objectively baseless that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).[4]

---

[4] Defendants' allegations related to a Chinese court's application of Chinese law to a Chinese patent are irrelevant to any question related to the validity of the U.S. '912 Patent. *See Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F. Supp. 2d 644, 655 (E.D. Pa. 2010) (holding "foreign patent determinations are not binding in litigation concerning United States patents and patent law" and are not entitled to deference).

Defendants' claim related to the '928 Patent fares no better. Defendants allege that the '928 Patent is of such narrow scope that Honeywell has no reasonable chance of establishing either actual infringement by an MEK customer or indirect infringement by MEK." Counterclaims ¶ 32. But Defendants do not provide any factual detail that describes the limited reach of the '928 Patent or explain why MEK's HFC-245fa product falls outside the patent's reach. Nor do Defendants allege facts to establish that Honeywell should have known with certainty that it had no chance of success at the time it filed this case. *See AstraZeneca AB v. Mylan Labs. Inc.*, No. 00-cv-6749, 2010 WL 2079722, at *4 (S.D.N.Y. May 19, 2010), *aff'd*, 412 F. App'x 297 (Fed. Cir. 2011) (rejecting sham litigation counterclaim because the infringement plaintiff "would be expected to know few details about the accused product at the outset of litigation" and, therefore, "may reasonably rely on discovery to learn the material details").

In the end, a conclusion that litigation is objectively baseless is one that a court should "reach only with great reluctance." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000). Defendants have not set forth a sufficient factual predicate to establish that Honeywell filed this patent claim with no objective chance of success. Accordingly, any antitrust claim predicated on sham litigation should be dismissed.[5]

## IV.    Fifth and Sixth Counterclaims: Defendants fail to state tortious interference claims.

Defendants' tortious interference claims are merely a recasting of their doomed antitrust claims. The lack of any independent, wrongful conduct requires that the tortious interference claims be dismissed. *Jensen Enters. Inc. v. Oldcastle Precast Inc.*, No. C 06-247 SI, 2009 WL 440492, at *8 (N.D. Cal. Feb. 23, 2009), *aff'd*, 375 F. App'x 730 (9th Cir. 2010) ("[P]laintiff's

---

[5] Due to the overreaching nature of Defendants' allegations, it is possible that Defendants intend to assert monopolization claims based on other conduct. Because the defects with those claims are discussed in greater detail elsewhere in this brief, they are not addressed again in this Section.

tortious interference claims depend on its antitrust claims. Since . . . plaintiff cannot establish antitrust violation or antitrust injury, plaintiff has not established the tortious or wrongful conduct essential to a tortious interference claim."). But even if the Court looks beyond the failure to identify any wrongful conduct, the tortious interference should also be dismissed because Defendants fail to: (1) specify which state's law governs its alleged claims, or (2) identify an existing or prospective contractual relationship that was interfered with.

First, Defendants do not allege which state's law governs their tortious interference claims, nor do they allege any geographic facts that would enable a choice-of-law analysis. Defendants' failure to specify which law governs is significant because "there is wide variation between the states concerning the exact nature and elements of tortious interference." Tortious interference with Contracts, 2 Franch. & Distr. Law & Prac. § 9:37 (citing Restatement (Second) of Torts Nine 37 Intro. Note (1979)). The allegations thus fail to give Honeywell "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Without any substantive law by which to evaluate the adequacy of the pleadings, Counterclaims Five and Six should be dismissed. *See e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) ("[U]ntil Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead."); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007) (same).

Second, even if the Court applies Illinois law—where MEK is incorporated and physically located—Defendants still fail to state a claim. Under Illinois law, like most states, a necessary predicate for any tortious interference claim is underlying wrongful conduct.[6] *See Belden Corp. v.*

---

[6] Tortious inference with contract under Illinois law requires: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the

*Internorth, Inc.*, 413 N.E.2d 98, 103 (Ill. Ct. App. 1980). Thus, Defendants' tortious interference

claims fail for the same reasons their antitrust claims fail. *See Methodist Health Servs. Corp. v.*

*OSF Healthcare Sys.*, No. 113CV01054SLDJEH, 2016 WL 5817176, at *17 (C.D. Ill. Sept. 30,

2016), *aff'd*, 859 F.3d 408 (7th Cir. 2017) ("Given that the Court has found no legal basis for any

antitrust violations, and the record does not show any wrongful means as Illinois courts use that

term, the tortious interference claims must fail . . .").[7]

Finally, Defendants' claims fail because they do not identify any existing contract or

prospective relationship that it lost as a result of the alleged conduct. Defendants allege in

conclusory fashion that they each "ha[ve] valid, existing contracts" with each other and that they

"ha[ve] a reasonable expectation of entering into [future] contracts" regarding the HFC-245fa

products. Counterclaims ¶¶ 58, 60. But what is missing—and what is plainly required under

Illinois law—is an allegation that Defendants lost a relationship that was under contract or was

denied a prospective contract as a result of the purported tortious interference. *See Zielinski v.*

*Schmalbeck*, 646 N.E.2d 655, 661 (Ill. Ct. App. 1995) ("[T]here must be allegation of interference

with business relationship with specific third parties . . . ."); *Du Page Aviation Corp. v. Du Page*

*Airport Auth.*, 594 N.E. 2d 1334, 1340 (Ill. Ct. App. 1992) (requiring a plaintiff to allege "business

relationships with *specific third parties*" and holding that allegations "in general and conclusory

terms that 'plaintiffs were continually negotiating and entering into business relationships with

others'" were insufficient); *Salem Bros., Inc. v. Corcoran*, No. 99 C 8228, 2000 WL 1050589, at

---

contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and
(5) damages." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015).
[7] Moreover, to the extent the tortious interference claims rest upon the filing of the instant patent
action, Illinois law provides absolute immunity to Honeywell. *See Havoco of Am., Ltd. v.*
*Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (*citing Lyddon v. Shaw*, 372 N.E.2d 685, 690 (Ill. Ct.
App. 1978) (Illinois law prohibits a plaintiff from basing a cause of action for tortious interference
with business opportunity on the wrongful filing of a lawsuit)).

*5 (N.D. Ill. July 28, 2000) (holding plaintiffs failed to allege a tortious interference claim because they "do not allege defendants interfered with specific third parties, nor do they identify any particular third parties" but instead "allege only that defendants have prevented them from 'pursuing their lawful business'").

Defendants' failure to plead the required elements of tortious interference is fatal to its claims; accordingly, the Court should dismiss Counterclaims Five and Six.

## V.      Seventh Counterclaim: Defendants fail to state a claim for corporate defamation.

Defendants' defamation claim must be dismissed because Defendants fail to identify a false statement of fact and because statements about this litigation are protected by the *Noerr-Pennington* doctrine.

Defendants allege that the "written and oral statements made by Honeywell were defamatory because they falsely stated that [MEK and Rhino Linings were] engaging in conduct that was unauthorized and/or unlawful." Counterclaims ¶ 62. Although Defendants fail to explain which "statements" and what "conduct" form the basis of that conclusory allegation, the only statements described in the counterclaims concern the instant patent litigation and related statements made to customers about MEK's infringement.[8] *See, e.g.*, Counterclaims ¶ 34. Those statements cannot support a defamation claim.

First, statements that MEK or Rhino Linings were acting "unlawful[ly]" are statements about the law, not statements of fact as necessary to support a defamation claim.  Given that no

---

[8] To the extent that Defendants' defamation claim is premised on Honeywell's alleged statement "to MEK's customers [1] that MEK's product is tainted with volatile organic compounds and [2] that an MEK customer's use of the product will lead to it being 'shut down,'" Counterclaims ¶ 35, the claim fails because those statements are true. HFC-245fa includes volatile organic compounds regulated by the EPA. *See* 40 C.F.R. § 51.100(s) (defining "volatile organic compounds" to include HFC-245fa). MEK also acknowledges that the statement is true. *See* Counterclaims ¶ 27. ("HFC-245fa product itself has been ordered by United States regulators to be phased out.").

court has yet to determine the issue of patent infringement, Honeywell's legal position on these issues are, by definition, not verifiably false statements of fact. *See Hellmutth, Obata & Kassabaum, L.P. v. Efficient Energy, LLC*, No. H-14-2945, 2016 U.S. Dist. LEXIS 19904, at *10 (S.D. Tex. Feb. 18, 2016) ("[t]he correctness of a party's opinion on an undecided legal issue . . . is not an appropriate basis for a defamation or business disparagement claim.").

Second, Defendants' defamation claim fails because Honeywell's lawsuit, press releases, demand letters and statements are immunized conduct under the *Noerr-Pennington* doctrine. Indeed, "Courts have generally applied the *Noerr-Pennington* Doctrine to preclude defamation claims, and the Doctrine has been extended to press releases unless the original petitioning conduct was baseless." *Capital Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017), *reconsideration denied*, 2017 WL 3429349 (D.N.J. Aug. 9, 2017). *See also Kemin Foods*, 384 F. Supp. 2d at 1349–50 (S.D. Iowa 2005) (extending immunity to press releases).

## CONCLUSION

For the foregoing reasons, Defendants' First through Seventh Counterclaims should be dismissed.

Dated: March 14, 2018                    Respectfully submitted,

*/s/ Michael J. Newton*
Michael J. Newton (Texas Bar No. 24003844)
mike.newton@alston.com
Derek Neilson (Texas Bar No. 24072255)
derek.neilson@alston.com
ALSTON & BIRD LLP
2828 N. Harwood Street, Suite 1800
Dallas, Texas 75201-2139
(214) 922-3400 (telephone)
(214) 922-3899 (facsimile)

Bruce J. Rose (North Carolina Bar No. 20105)
bruce.rose@alston.com
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
(704) 444-1000 (telephone)
(704) 444-1111 (facsimile)

ATTORNEYS FOR PLAINTIFF HONEYWELL
INTERNATIONAL INC.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing document has been served

on March 14, 2018 to all counsel of record who are deemed to have consented to electronic service

via the Court's CM/ECF system per Local Rule 5.1(d).

*/s/ Michael J. Newton*
Michael J. Newton