# IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| HONEYWELL INTERNATIONAL INC., |  |
| Plaintiff, |  |
| v. | Civil Action No. 3:17-cv-01390-M |
| MEK CHEMICAL CORPORATION and RHINO LININGS CORPORATION, |  |
| Defendants. |  |

## HONEYWELL'S PARTIAL MOTION TO DISMISS DEFENDANT RHINO LININGS' THIRD AND FOURTH COUNTERCLAIMS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD FOR 12(b)(6) MOTION TO DISMISS ..................................................... 4

ARGUMENT ........................................................................................................... 5

    I.    Rhino Linings' price discrimination claim should be dismissed because
        the allegations unequivocally establish that the favorable prices were
        available to Rhino Linings. ...................................................................................... 5

    II.    Rhino Linings fails to identify a prospective contract to support its claim
         for tortious interference with prospective business relations................................. 9

CONCLUSION........................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    No. CIV.A. 07-1251 (JAP), 2008 WL 2967034 (D.N.J. July 31, 2008) ...................................1

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................4

*Automatic Canteen Co. of Am. v. FTC*,
    346 U.S. 61 (1953)..................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................4

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993)................................................................................................................6

*Ceramic Performance Worldwide, LLC v. Motor Works, LLC*,
    2010 WL 234804 (N.D. Tex. Jan. 21, 2010) .......................................................................10

*Comcoa, Inc. v. NEC Telephones, Inc.*,
    931 F.2d 655 (10th Cir. 1991) ................................................................................................7

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*,
    637 F.2d 105 (3d Cir. 1980).....................................................................................................7

*FLM Collision Parts, Inc. v. Ford Motor Co.*,
    543 F.2d 1019 (2d Cir. 1976)...................................................................................................7

*FTC v. Morton Salt. Co.*,
    334 U.S. 37 (1948)...................................................................................................................7

*LeFrere v. Quezada*,
    582 F.3d 1260 (11th Cir. 2009) .........................................................................................4, 7

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*,
    145 F.3d 320 (5th Cir. 1998) ..................................................................................................6

*Mill Creek Press, Inc. v. The Thomas Kinkade Co.*,
    2004 WL 2607987 (N.D. Tex. Nov. 16, 2004)..................................................................9, 10

*Miller v. BAC Home Loans Servicing, L.P.*,
    726 F.3d 717 (5th Cir. 2013) ..............................................................................................4, 7

*Mitsubishi Heavy Indus., Ltd. v. Gen. Co.*,
  720 F. Supp. 2d 1061 (W.D. Ark. 2010).................................................................................4

*Peveto v. Invista S.A. R.L.*,
  2016 WL 4942047 (E.D. Tex. Aug. 19, 2016) .......................................................................10

*Sheddy v. JPMorgan Chase Bank, N.A.*,
  No. 3:12-CV-2804-M BF, 2013 WL 5450288 (N.D. Tex. Sept. 30, 2013) .........................4, 7

*Shreve Equip., Inc. v. Clay Equip. Corp.*,
  650 F.2d 101 (6th Cir. 1981) ...................................................................................................6

*Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*,
  477 F.3d 854 (6th Cir. 2007) ...............................................................................................6, 9

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
  137 S. Ct. 1514 (2017).............................................................................................................3

*Tri-Valley Packing Ass'n v. FTC*,
  329 F.2d 694 (9th Cir. 1964) ...................................................................................................7

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
  546 U.S. 164 (2006)..............................................................................................................5, 6

**RULES**

Fed. R. Civ. P. 12(b)(6).............................................................................................4, 7, 8, 11

**STATUTES**

15 U.S.C. § 13............................................................................................................................5

Robinson-Patman Act Section 2(a)...................................................................................... *passim*

## INTRODUCTION

In a renewed attempt to divert attention away from Honeywell International Inc.'s ("Honeywell") legitimate patent infringement lawsuit, Defendants MEK Chemical Corporation ("MEK") and Rhino Linings Corporation ("Rhino Linings") have filed yet another round of counterclaims (Dkt. Nos. 108 & 109), which aim to cure the pleading defects that led this Court to dismiss the previous iteration. *See* Dkt. 88. Defendants' Second Amended Counterclaims inject a vast amount of new and extraneous content, most of which is irrelevant to Defendants' claims. Nonetheless, the newly minted allegations—if assumed to be true, *which they are not*—correct several of the basic deficiencies highlighted in Honeywell's original Motion to Dismiss.

But while the amendments cure *some* of the prior pleading defects, certain of the Counterclaims remain fatally flawed—specifically Rhino Linings' Third and Fourth Counterclaims.[1] With its Third Counterclaim, Rhino Linings attempts to swap its failed tying claim for a price discrimination claim under Section 2(a) of the Robinson-Patman Act. But that new claim fails on its face because Rhino admits that the (allegedly discriminatory) discounts provided to Rhino's competitors were also equally available to Rhino Linings. As a matter of law, Honeywell cannot be held liable if Rhino Linings rejected the same offer presented to its counterparts. Rhino Linings' Fourth Counterclaim, alleging tortious interference with prospective business relations, also fails because Rhino neglected to cure the precise defect that led this Court

---

[1] Honeywell continues to believe that Defendants have failed to allege facts to support their claims for monopolization and attempted monopolization, as well as the tortious interference claims predicated on the same conduct. Nonetheless, because those claims will necessarily fail once Honeywell's patent claims progress beyond the Markman stage, *see, e.g.*, *Abraxis Bioscience, Inc. v. Navinta LLC*, No. CIV.A. 07-1251 (JAP), 2008 WL 2967034, at *8 (D.N.J. July 31, 2008) ("the result of the infringement claim . . . could . . . eliminate Defendant's 'sham' litigation claim"), Honeywell will withhold that challenge and wait for a time when those claims can be disposed of in a more straightforward manner.

to dismiss its claim last time around. The Court's order was clear that allegations identifying the specific prospective contract are necessary to state a claim for tortious interference. Despite that guidance, Rhino Linings once again fails to identify a single prospective contract that it would have secured but-for Honeywell's alleged interference.

For those reasons, as elaborated further below, Rhino Linings' Third and Fourth Counterclaims should be dismissed *with prejudice*.

## BACKGROUND

HFC-245fa is a hydrofluorocarbon ("HFC") used as a blowing agent for rigid insulating foams. *See* Counterclaims ¶¶ 6–7. [2] Although HFC-245fa was once viewed as a more environmentally friendly alternative to older chlorofluorocarbons ("CFCs") and hydrochlorofluorocarbons ("HCFCs"), it is now being phased out by U.S. regulation in favor of new generation of products, including a trifluoropropene known as HFO-1233zd(E). *Id.* ¶¶ 33–36, 53–55. Honeywell currently markets and sells both HFC-245fa and HFO-1233zd(E) in the United States. *Id.* ¶¶ 53, 71.

In addition to selling HFC-245fa, Honeywell also owns several patents that cover processes for manufacturing, and applications for using, HFC-245fa, including U.S. Patent No. 5,902,912 (the '912 Patent) and U.S. Patent No. 6,514,928 (the '928 Patent). *Id.* ¶¶ 60, 61, 102. Despite the

---

[2] The factual allegations set forth in Defendants' Counterclaims are virtually identical. *See* Counterclaims ¶¶ 1–136. There are, however, minor differences in the actual claims brought by the two defendants. The First, Second, Fourth, and Fifth Counterclaims—asserting claims for monopolization, attempted monopolization, tortious interference with *prospective* business relations, and business disparagement, respectively—are the same for both defendants. The Third Counterclaims, however, are unique for each defendant. Rhino Linings' Third Counterclaim asserts a claim for price discrimination under Section 2(a) of the Robinson-Patman Act, a claim that is not brought by MEK. MEK's Third Counterclaim alleges tortious interference with *existing* contractual relations, which is not pursued by Rhino Linings. Because Honeywell is moving to dismiss only certain claims brought by Rhino Linings, all citations in this motion to the Counterclaims refer to the Counterclaims filed by Rhino Linings (Dkt. No. 109).

protections afforded by the '912 and '928 Patents,[3] for years MEK has imported infringing HFC-245fa from a Chinese manufacturer and sold it to Honeywell's customers in the United States, including Rhino Linings. *Id.* ¶ 6. To defend its patent rights, Honeywell sued MEK and Rhino Linings for patent infringement.[4] *See* ECF No. 1.

In response to Honeywell's patent infringement lawsuit, Defendants have filed several iterations of counterclaims, alleging federal antitrust violations and related state-law tort claims. Honeywell moved to dismiss Defendants' earlier counterclaims and, following a hearing, the Court granted the motion and dismissed the counterclaims with leave to amend. Dkt. No. 88. On July 26, 2018, both Defendants filed Second Amended Counterclaims, which (i) abandoned certain of their earlier claims (i.e., tying and exclusive dealing), (ii) added additional factual support for certain claims (i.e., monopolization and attempted monopolization), and (iii) in the case of Rhino Linings, asserted a new claim for price-discrimination under the Robinson-Patman Act, which alleges that Honeywell sold HFO-1233zd(E) to Rhino Linings' competitors at a price $1.00 per pound below the price charged to Rhino Linings. *See* Counterclaims ¶ 107–08.

The core of all Defendants' counterclaims (except Rhino Linings' price discrimination claim) is that Honeywell's infringement lawsuit is a "sham" designed solely to interfere with

---

[3] The '912 Patent expired on June 26, 2017, and as a result, Honeywell may recover damages for infringement of the '912 Patent that occurred ***before*** the patent's expiration date—which is all Honeywell seeks to do in this litigation. The '928 Patent has not expired.

[4] Honeywell originally sued MEK for patent infringement of the '912 Patent in the U.S. District Court for the District of New Jersey in December 2016 (the "New Jersey action"). Following the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), Honeywell voluntarily dismissed the New Jersey action and re-filed its claims in this Court on May 24, 2017. (Dkt. No. 1 ) On June 23, 2017, Honeywell filed a separate action for infringement of the '928 Patent (Civ. No. 3:17-cv-01663-M). Those two complaints were consolidated on August 2, 2017 (Dkt. No. 17), and brought a separate action against MEK for infringement of the '928 Patent. In January 2018, Honeywell filed a separate complaint against Rhino Linings involving the same patents (Civ. No. 3:19-cv-00220-M), which was consolidated with this action on February 6, 2018. Dkt. No. 36.

Defendants' business, as opposed to seeking success on the merits. Although Honeywell disputes the assertion that this patent infringement case is a sham, Honeywell does not at this stage challenge the sufficiency of Defendants' amended pleadings concerning "sham" litigation. These claims, of course, will ultimately fail on the merits when Honeywell prevails on its patent-infringement claims because a "winning lawsuit is by definition not a sham." *Mitsubishi Heavy Indus., Ltd. v. Gen. Co.*, 720 F. Supp. 2d 1061, 1070 (W.D. Ark. 2010).

But even accepting the sufficiency of Defendants' sham litigation pleadings for the time being, there remain obvious defects in Rhino Linings' Third and Fourth counterclaims that require their dismissal as a matter of law. Those defects are addressed below.

## LEGAL STANDARD FOR 12(b)(6) MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim lacks facial plausibility unless the complaint contains "factual content" sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to state a claim for relief. *Id.* at 679.

Even if the allegations establish the elements of the alleged cause of action, a complaint may still be dismissed under Rule 12(b)(6) if the allegations on their face establish the existence of an affirmative defense. *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) ("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."). "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller v. BAC Home Loans*

4

*Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (citation omitted); *see also Sheddy v. JPMorgan Chase Bank, N.A.*, No. 3:12-CV-2804, 2013 WL 5450288, at *6 (N.D. Tex. Sept. 30, 2013) (Lynn, J.) (same).

## ARGUMENT

**I.**    **Rhino Linings' price discrimination claim should be dismissed because the allegations unequivocally establish that the favorable prices were available to Rhino Linings.**

In its Second Amended Counterclaims, Rhino Linings asserts—for the first time—that Honeywell engaged in unlawful price discrimination under Section 2(a) of the Robinson-Patman Act because it "sold HFO-1233zd(E) to Rhino Linings' competitors for "approximately 17% less" than Honeywell charged Rhino Linings. *See* Rhino Counterclaims (Dkt. No. 108) ¶ 169. Setting aside whether that alleged price differential is sufficient to state a prima facie case for price discrimination, the allegations admit a fatal flaw in Rhino Linings' claim. Specifically, Rhino Linings concedes—"upon information and belief"—that Honeywell offered Rhino the same discount that Honeywell provided to Rhino's competitors, but Rhino rejected the offer. *Id.* ¶¶ 107–08. Accepting those allegation as true, Rhino Linings' claim should be dismissed.

Section 2(a) of the Robinson-Patman Act prohibits a seller from charging discriminatory prices to different buyers at the same level of the distribution chain "where the effect of such discrimination may be substantially to lessen competition." 15 U.S.C. § 13. Although Rhino Linings argues that Honeywell (the *seller*) leveraged its power to impose discriminatory prices, that is not actually a concern that Robinson-Patman was designed to address. Instead, "with the Robinson–Patman Act, Congress sought to target the perceived harm to competition occasioned by powerful *buyers*, rather than sellers; specifically, Congress responded to the advent of large chainstores, enterprises with the clout to obtain lower prices for goods than smaller buyers could demand." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006)

(emphasis added).

Nonetheless, "[m]indful of the purposes of the Act and of the antitrust laws generally" (to promote free competition), the Supreme Court has repeatedly "explained that Robinson-Patman does not 'ban all price differences charged to different purchasers,'" but rather "proscribes 'price discrimination only to the extent that [the price differential] threatens to injure competition." *Volvo Trucks*, 546 U.S. at 176 (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993)). But assessing which types of discriminatory pricing are injurious to competition is not always easy, particularly in light of the Act's complex draftsmanship. *Cf. Automatic Canteen Co. of Am. v. FTC*, 346 U.S. 61, 65 (1953) ("precision of expression is not an outstanding characteristic of the Robinson-Patman Act"). As a result, courts have endeavored to provide interpretive guidance regarding the situations where discriminatory prices *do not* present an antitrust concern.

One of those situations, recognized by the Fifth Circuit as well as courts across the country, is where the discount offered to the "favored purchasers" was also "functionally available" to the plaintiff. "This 'functional availability' theory 'is a judicial graft on § 2(a) and is not explicitly embodied in the text of the statute.' Nevertheless, the theory is clear and coincides with the purpose of the Act in that a price discount equally available to all purchasers for the same customer and product is not price discrimination." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 326 (5th Cir. 1998) (citation omitted). Under the "functional availability" theory, if the court finds that a purchaser "did not take advantage of a lower price or discount which was functionally available on an equal basis, no price discrimination has occurred." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007); *see also Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F.2d 101, 105 (6th Cir. 1981) ("Where a purchaser does not

take advantage of a lower price or a discount which is functionally available on an equal basis, it has been held that either no price discrimination has occurred, or the discrimination is not the proximate cause of the injury."); *FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019, 1024 (2d Cir. 1976) ("Ford's incentive payment plan did not discriminate against any of its purchasing dealers. All Ford dealers could receive the incentive payments resulting in lower prices for parts they resold to independent repair shops, and all were denied these payments when the parts were not so resold."); *Tri-Valley Packing Ass'n v. FTC*, 329 F.2d 694, 703–04 (9th Cir. 1964) ("[I]f the lower price would have been available to the nonfavored buyer in the same market where the favored buyer made his purchase, the probability of competitive injury due to the fact that the nonfavored buyer paid more for the product is not the result of price discrimination, but of the nonfavored buyer's failure to take advantage of the opportunity, equally available to him, of buying at the same low prices."); *Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 664 (10th Cir. 1991) (upholding jury instruction that stated: "If you find that defendants' volume discounts were *functionally available* to the plaintiffs, then as a matter of law either there is no price discrimination or the discrimination is not the proximate cause of injury. The implementation of a discount program need not guarantee that all customers benefit to the same degree as other customers, as long as the program is evenly administered." (emphasis in original)); *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 120 (3d Cir. 1980) (distinguishing *FTC v. Morton Salt. Co.*, 334 U.S. 37 (1948), because, in *Morton Salt*, the discount was *not* available to all customers).

Although the functional availability theory is typically viewed as a defense to a price-discrimination claim, it may be presented on a motion to dismiss where the allegations, accepted as true, establish the elements of the defense. The Fifth Circuit, as well as this Court, has

recognized that "[w]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Miller*, 726 F.3d at 726; *Sheddy*, 2013 WL 5450288, at *6 (Lynn, J.) (same); *see also LeFrere*, 582 F.3d at 1263 ("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)."). Rhino Linings' allegations unequivocally establish the existence of the functional availability defense and, accordingly, subject the counterclaim to dismissal.

Rhino Linings' price-discrimination allegations are found in Paragraphs 107 and 108. In those paragraphs, Rhino alleges that, when it "attempted to purchase HFO-1233zd(E) from Honeywell," Honeywell quoted a "cost prohibitive" price of "approximately $7.00 per pound." Rhino Counterclaims (Dkt. No. 108) ¶ 107. According to Rhino Linings, after it complained about the $7.00 quote, Honeywell "offered to reduce the price of the HFO-1233zd(E) by almost $1.00 per pound if Rhino Linings agreed to purchase all of its HFC-245fa requirements from Honeywell." *Id.* Rhino alleges that it "refused to enter" the proposed arrangement, "so Honeywell penalized Rhino Linings by charging the higher price for HFO-1233zd(E)." *Id.*

Those allegations, standing alone, do not support a claim for price discrimination because they do not establish a disparity in price between the amounts charged to Rhino compared to its competitors. Instead, Rhino's critical price-discrimination allegation is found in the following paragraph, where Rhino alleges that "Honeywell made similar offers to other ccSPF manufacturers," and that "some [of those manufacturers] accepted Honeywell's discriminatory and anticompetitive offers . . . which caused MEK to lose sales and threatened MEK's chances of survival as a lower cost HFC-245fa supplier alternative to Honeywell." *Id.* ¶ 108.[5]

---

[5] The relevant paragraphs, in full, provide:

> 107.   Rhino Linings attempted to purchase HFO-1233zd(E) from Honeywell to make ccSPF. Honeywell quoted Rhino Linings a price for the HFO-1233zd(E) of

Those allegations defeat Rhino Linings' Robinson-Patman claim. Accepted as true, the allegations demonstrate that Honeywell presented the exact same offer to Rhino Linings that it made to competing manufacturers; the only difference is that Rhino "refused to enter" the arrangement (*id.* ¶ 107) while "some" of its competitors "accepted" the deal. *Id.* ¶ 108. Because Rhino Linings admits that it "did not take advantage of a lower price or discount which was functionally available on an equal basis, no price discrimination has occurred." *Smith Wholesale Co.*, 477 F.3d at 861. Rhino Linings' price-discrimination claim should be dismissed.

## II.   Rhino Linings fails to identify a prospective contract to support its claim for tortious interference with prospective business relations.

Rhino has failed to cure the defect that led this Court to dismiss the earlier version of its claim for tortious interference with prospective business relations. In its July 5 Order, the Court dismissed Rhino's tortious interference claim because, among other reasons, Rhino had failed to

---

approximately $7.00 per pound, which was almost $2.50 per pound more than Rhino Linings was paying Honeywell for HFC-245fa. Rhino Linings complained that the price of the HFO-1233zd(E) was cost prohibitive. Honeywell offered to reduce the price of the HFO-1233zd(E) by almost $1.00 per pound if Rhino Linings agreed to purchase all of its HFC-245fa requirements from Honeywell exclusively and not purchase any HFC-245fa or HFOs from MEK. Rhino Linings refused to enter into any exclusive dealings arrangement or tying agreement with Honeywell, so Honeywell penalized Rhino Linings by charging the higher price for HFO-1233zd(E). Rhino Linings paid the higher price which made the resulting ccSPF non-price competitive, and Rhino Linings lost sales, revenue and profits as a direct result.

108.   Upon information and belief, Honeywell made similar offers to other ccSPF manufacturers, including Demilec, Lapolla, Elastochem Specialty Chemicals, SES Polyurethane Systems, Covestro, Accella Polyurethane Systems, NCFI Polyurethanes, and Henry Co.; some accepted Honeywell's discriminatory and anticompetitive offers, and entered into various exclusive dealings arrangement, tying agreements and price discrimination arrangements with Honeywell which caused MEK to lose sales and threatened MEK's chances of survival as a lower cost HFC-245fa supplier alternative to Honeywell.

Rhino Counterclaims (Dkt. No. 108) ¶¶ 107–08.

"allege a specific existing contract or a contract that is 'reasonably probable, considering all of the facts and circumstances connected to the transaction.'" Dkt. No. 88 at 15 (quoting *Mill Creek Press, Inc. v. The Thomas Kinkade Co.*, 2004 WL 2607987, at \*11 (N.D. Tex. Nov. 16, 2004)). The Court explained that a conclusory allegation that Rhino has "a reasonable expectation of entering into future contracts" is not enough to state a claim for tortious interference. Dkt. No. 88 at 15 (alterations omitted).

Rhino's latest allegations are virtually identical to the allegations that this Court found insufficient. Once again, Rhino fails to identify a specific customer or contract that was interfered with, much less set forth factual allegations to demonstrate that the prospective contract was otherwise likely to materialize. Instead, Rhino offers essentially the same conclusory allegation that it "was negotiating to sell ccSPF to various [unidentified] suppliers and applicator companies" and that "[u]pon information and belief, there was a reasonable probability that [Rhino] would have entered into a business relationship with such [unidentified] potential customers, including the placement of new orders, until Honeywell interfered." Rhino Counterclaims (Dkt. No. 108) ¶ 184. Those allegations, as the Court has previously explained, are not enough.

Once again, Rhino Linings has "fail[ed] to specifically identify the contract with which [Honeywell is] alleged to have interfered." *Peveto v. Invista S.A. R.L.*, 2016 WL 4942047, at \*6 (E.D. Tex. Aug. 19, 2016). Because Rhino "fails to identify any prospective contracts and the alleged interference with those contracts[,] . . . the[] allegations are insufficient to state a [tortious interference] claim under Texas law." *Mill Creek*, 2004 WL 2607987, at \*11; *see also Ceramic Performance Worldwide, LLC v. Motor Works, LLC*, 2010 WL 234804, at \*3 (N.D. Tex. Jan. 21, 2010) ("[P]laintiff does not identify any prospective contracts or business relationships with third-parties that have been jeopardized by the dissemination of false information by defendants. Rather,

10

plaintiff's tortious interference claims amount to nothing more than a formulaic recitation of the elements of this cause of action, which is insufficient to state a claim under Texas law.").[6] Rhino Linings' claim for tortious interference with prospective business relations should be dismissed.

## CONCLUSION

For the foregoing reasons, Rhino Linings' Third and Fourth Counterclaims should be dismissed.

Dated: August 23, 2018    Respectfully submitted,

          */s/ Michael J. Newton*
          Michael J. Newton (Texas Bar No. 24003844)
          mike.newton@alston.com
          Derek Neilson (Texas Bar No. 24072255)
          derek.neilson@alston.com
          ALSTON & BIRD LLP
          2828 N. Harwood Street, Suite 1800
          Dallas, Texas 75201-2139
          (214) 922-3400 (telephone)
          (214) 922-3899 (facsimile)

          Bruce J. Rose (North Carolina Bar No. 20105)
          bruce.rose@alston.com
          ALSTON & BIRD LLP
          101 S. Tryon Street, Suite 4000
          Charlotte, North Carolina 28280-4000
          (704) 444-1000 (telephone)
          (704) 444-1111 (facsimile)

---

[6] MEK also asserts a claim for tortious interference with prospective business relations but, unlike Rhino Linings, actually identifies specific contracts that allegedly would have materialized but-for Honeywell's actions. *See* MEK Counterclaims (Dkt. No. 109) ¶ 190 ("[MEK] was negotiating to sell chemicals to other ccSPF manufacturers, including Accella, Lapolla, Demilac, Elassto Chemical, NCFI, Polycoat and Gaco Western. These potential customers approved the quality and price of [MEK's] products, but the relationship had not yet been reduced to a contract. There was a reasonable probability that [MEK] would have entered into a business relationship with such potential customers, including the placement of new orders, until Honeywell interfered with the prospective business relationship."). Although Honeywell disputes the merits of MEK's allegations, Honeywell acknowledges that they are sufficient to state a claim for tortious interference for purposes of surviving a Rule 12(b)(6) motion. Rhino Linings' allegations are not.

Matthew D. Kent (Georgia Bar No. 526272)
matthew.kent@alston.com
D. Andrew Hatchett (Texas Bar No. 24085368)
andrew.hatchett@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)

ATTORNEYS FOR PLAINTIFF HONEYWELL
INTERNATIONAL INC.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing document has been served

on August 23, 2018 to all counsel of record who are deemed to have consented to electronic service

via the Court's CM/ECF system per Local Rule 5.1(d).


*/s/ Andrew Hatchett*
Andrew Hatchett

13